**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**BEAUFORT DIVISION**

| | |
|---|---|
| ALLSTATE VEHICLE AND PROPERTY ) | |
| INSURANCE COMPANY, ) | |
| ) | No.: 9:17-cv-00384-DCN |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| ROSE WADFORD HUNTER, JANE DOE, ) | |
| by and through her mother and natural ) | |
| Guardian ad Litem, MARY ROE, and ) | |
| MARY ROE, individually, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

The following matter is before the court on plaintiff Allstate Vehicle and Property

Insurance Company's ("Allstate") motion for summary judgment, ECF No. 34. For the

reasons set forth below, the court grants the motion for summary judgment.

## I.   BACKGROUND

This is an insurance coverage case. It arises out of the alleged sexual assault of

minor Jane Doe ("Doe") by Joseph Stephen Hunter ("Joseph Hunter"), the husband of

Rose Wadford Hunter ("Rose Hunter"). According to the complaint, Rose and Joseph

Hunter were Doe's neighbors in Bluffton, South Carolina when the abuse and harassment

occurred. Joseph Hunter began to sexually assault Doe in 2006, when Doe was seven

years old. He continued to do so until 2015, when Doe was 16 years old. During this

period, Joseph Hunter exposed himself to Doe, forced Doe to masturbate Joseph Hunter,

and made Doe perform and receive oral sex. Joseph Hunter videotaped and

photographed Doe performing these sex acts. On January 5, 2016 Joseph Hunter was

arrested on charges of first and third degree child molestation. The complaint alleges that

Rose Hunter was aware of her husband's sexual proclivities concerning young girls yet continued to encourage interactions between Doe and Joseph Hunter including sleepovers. The complaint further alleges that after Joseph Hunter's arrest, Rose Hunter posted comments on the social networking site Facebook "disparaging, denigrating, and defaming" Doe's mother Mary Roe ("Roe") as a "sorry mother." This type of behavior was, the complaint alleges, part of a pattern of behavior that Rose Hunter engaged in to discredit victims of Joseph Hunter's abuse.

Doe, through Roe, brought suit against Rose Hunter in state court entitled <u>Jane Doe, by and through her mother and natural Guardian Ad litem, Mary Roe, and Mary Roe, individually</u>, C.A. No. 2016-CP-07-1541 ("the underlying suit"). Doe alleges that as the result of Joseph Hunter's actions—and Rose Hunter's inactions in the face of the abuse—Doe has received substantial medical, therapeutic, and counseling expenses. Doe suffers from, and likely will continue to suffer from, psychological distress including depression and post-traumatic stress disorder. Doe levies causes of action for negligence/gross negligence/recklessness, defamation, breach of fiduciary duty, and aiding and abetting breach of fiduciary duty.

Allstate issued a homeowner's policy, Policy No. 990100794 ("the Policy"), to the Hunters, with an effective date of June 16, 2015. The relevant provisions of the Policy are the family liability protection and guest medical protection provisions. The family liability protection provides:

Losses we cover under Coverage X:

Subject to the terms, conditions and limitations of this policy, we will pay damages which an insured person becomes legally obligated to pay because of bodily injury or property damages arising from an occurrence to which this policy applies, and is covered by this part of the policy.

2

The Policy defines an "insured person" as "you and, if a resident of your household: a) any relative; and b) any dependent person in your care," and further defines "you" and "your" as "the person listed under Named Insured(s) on the Policy Declarations as the insured and that person's resident spouse." The Policy goes on to define an "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions during the policy period, resulting in bodily injury or property damage." And finally, "bodily injury" is defined as "physical harm to the body, including sickness or disease . . . ." The Policy also includes a number of exclusions from coverage. Most saliently, it includes an intentional acts exclusion:

> Losses we do not cover under Coverage X:
>
> We do not cover any bodily injury or property damage intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any insured person. This exclusion applies even if:
>
>> a) Such insured person lacks the mental capacity to govern his or her conduct;
>> b) Such bodily injury or property damage is of a different kind or degree than intended or reasonably expected; or
>> c) Such bodily injury or property damage is sustained by a different person than intended or reasonably expected.

Allstate is currently defending Rose Hunter in the underlying action, subject to a reservation of rights.

On February 8, 2017 Allstate filed this suit, asking the court to declare that Allstate is not required to provide coverage for any of Doe's injuries. Specifically, Allstate contends that the Policy does not provide coverage because: (1) allegations of sexual abuse do not constitute an "occurrence" as defined under the Policy; (2) all or some of the allegations of the sexual abuse did not happen during the policy period; and

(3) the allegations of sexual abuse in the underlying action arise from the intentional and criminal acts of Joseph Hunter, placing the acts within the Policy's intentional acts exclusion.

Allstate filed a motion for summary judgment on March 12, 2018. ECF No. 34. Defendants[1] filed a response on March 26, 2018, ECF No. 36, and Allstate filed a reply on April 9, 2018, ECF No. 41. The court held a hearing on the motion on May 15, 2018. On June 7, 2018, the court entered an order deferring its ruling with regard to the negligence and breach of fiduciary duty claims and instead certifying a question of state law to the Supreme Court of South Carolina. ECF No. 48. In its order, the court also held that there was no coverage for defamation under the Policy. Id. at 16. Then on December 13, 2018, the court entered a text order denying without prejudice the motion for summary judgment pending the outcome of the certified question.[2] ECF No. 61. The Supreme Court of South Carolina answered the certified question on November 21, 2018, ECF No. 62-1, and denied the petition for rehearing on December 13, 2018, ECF No. 63-1.

In addition, Roe and Doe filed a motion to reconsider on July 5, 2018 with respect to the portion of the court's June 7, 2018 order related to defendants' defamation claim. The court denied the motion on August 13, 2018. ECF No. 57. Doe and Roe filed an appeal with the Fourth Circuit on September 11, 2018, ECF No. 58. That appeal is

---

[1] The court refers to "defendants" to refer collectively to Rose Hunter, Jane Doe, and Mary Roe. While these parties are obviously adversarial in the underlying suit, Allstate refers to all of these parties as "defendants," so for ease of reference the court adopts this lexicon.

[2] This order vacates and supersedes the December 13, 2018 text order.

currently pending before the Fourth Circuit.  See <u>Allstate Vehicle and Property v. Jane</u> <u>Doe</u>, No. 18-2079.

## II.  STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "Rule 56(c) of the Federal Rules of Civil Procedure requires that the district court enter judgment against a party who, 'after adequate time for discovery . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" <u>Stone v. Liberty Mut. Ins. Co.</u>, 105 F.3d 188, 190 (4th Cir. 1997) (quoting <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986)).  Any reasonable inferences are to be drawn in favor of the nonmoving party.  <u>See</u> <u>Webster v. U.S. Dep't of Agric.</u>, 685 F.3d 411, 421 (4th Cir. 2012).  However, to defeat summary judgment, the nonmoving party must identify an error of law or a genuine issue of disputed material fact.  <u>See</u> Fed. R. Civ. P. 56(a); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986); <u>see also</u> <u>Bouchat v. Balt. Ravens Football Club, Inc.</u>, 346 F.3d 514, 522 (4th Cir. 2003).

Although the court must draw all justifiable inferences in favor of the nonmoving party, the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence.  <u>See</u> <u>Anderson</u> , 477 U.S. at 252; <u>Stone</u>, 105 F.3d at 191.  Rather, "a party opposing a properly supported motion for summary judgment . . . must 'set forth specific facts showing that there is a genuine issue for trial.'" <u>Bouchat</u>, 346 F.3d at 522 (quoting Fed. R. Civ. P. 56(e) (2002) (amended 2010)).  If the adverse party fails to

provide evidence establishing that the factfinder could reasonably decide in his favor, then summary judgment shall be entered "regardless of '[a]ny proof or evidentiary requirements imposed by the substantive law.'"  Id. (quoting Anderson, 477 U.S. at 248).

### III.  DISCUSSION

Allstate argues that the Policy does not cover the claims against Rose Hunter for negligence and breach of fiduciary duty.[3]  The court first includes the relevant substance of its June 7, 2018 order to provide context for its discussion of the answer to the certified question.[4]  Then the court discusses the impact of the answer to the certified question on this case.  After considering the answer to the certified question, the court concludes that the Policy provides no coverage for either claim and grants Allstate's motion for summary judgment.

### A.  Relevant Substance of the June 7, 2018 Order

#### 1.  Joint Obligations Provision

The Policy includes a "joint obligations" provision, which states:

The policy imposes joint obligations on the Named Insured(s) listed on the Policy Declarations and on that person's resident spouse.  These persons are defined as you or your.  This means that the responsibilities, acts and omissions of a person defined as you or your will be binding upon any other person defined as you or your.

This policy imposes joint obligations on persons defined as an insured person.  This means that the responsibilities, acts and failures to act of a person defined as an insured person will be binding upon another person defined as an insured person.

---

[3] The court has already held that the Policy does not cover the defamation claim against Rose Hunter in its June 7, 2018 order.  Therefore, it does not address the defamation claim now.

[4] The court notes that in its June 7, 2018 order, it mistakenly referred to defendants as "plaintiffs."  The court corrects this scrivener's error in this order.

It is undisputed that both Joseph Hunter and Rose Hunter are considered "named insureds" under the Policy. Allstate argues that this joint obligations provision operates such that the Policy imposes joint obligations on all insureds, and where coverage for damages as the result of the intentional and/or criminal acts of one insured is excluded, coverage is excluded for all insureds. ECF No. 41 at 6. Defendants counter that a "reasonable and plausible interpretation of this 'joint obligations' clause" is that the clause refers to the obligations to pay premiums to "take certain actions before and after the loss." ECF No. 36 at 37.

The court agrees with Allstate that the language of the joint obligations provision is unambiguous. The Policy is clear that Rose Hunter, who is a named insured under the Policy, is bound by the "acts and omissions" of her husband Joseph Hunter, another named insured under the Policy. To find otherwise would be to torture the language of the Policy. While it does not appear that South Carolina state courts have interpreted an insurance policy containing a joint obligations provision, <u>Allstate Indem. Co. v. Tilmon</u>, 2014 WL 1154666 (D.S.C. Mar. 21, 2014) is instructive. In <u>Tilmon</u>, the court interpreted an identical joint obligation clause and held that the language "renders the criminal acts exclusion applicable to claims for negligence against other insureds." <u>Id.</u> at *7. The joint obligations provision in the policy in <u>Tilmon</u> stated that "[t] he terms of this policy impose joint obligations on the persons defined as an insured person . . . [and][t]his means that the responsibilities, acts and failures to act of a person defined as an insured person will be binding upon another person defined as an insured person." <u>Id.</u> The court adopts the reasoning in <u>Tilmon</u> to find that the joint obligations provision is valid and applies the claims for negligence against all named insureds.

Defendants discuss at length the doctrine of reasonable expectations, and argue that this doctrine should be applied to the joint obligation provision. Under the doctrine of reasonable expectations, "[t]he objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations." Bell v. Progressive Direct Ins. Co., 757 S.E.2d 399, 405 (S.C. 2014) (citing Robert E. Keeton, Insurance Law Rights at Variance with Policy Provisions: Part One, 83 Harv. L.Rev. 961, 967 (1970)). But in Bell, the Supreme Court of South Carolina clearly held that the doctrine does not apply where the policy "unambiguously" denies coverage under its plain terms. Id. A review of the joint obligations provision in the policy at hand demonstrates that the policy unambiguously denies coverage to one named insured where the other named insured has been barred from coverage. Because the language of the Policy is clear and unambiguous, the court holds that the joint obligations provision operates to bar coverage—where the actions of one insured person excludes him from coverage, those acts are binding upon the other insured parties and preclude coverage for any claims against the other insured as well.

### 2. Coverage for Sexual Abuse as "Occurrence" under Policy

The court now turns to the substantive questions of coverage under the Policy. Allstate first argues that it is entitled to summary judgment because Joseph Hunter's sexual abuse of Doe was not an "occurrence" triggering coverage under the Policy because it was not an accident. And even if the sexual abuse is considered an "occurrence," Allstate contends, coverage would be unavailable because the Policy expressly excludes coverage for bodily injury resulting from intentional and criminal

acts. For both arguments, the governing case is <u>Mfrs. & Merchs. Mut. Ins. Co. v. Harvey</u>, 498 S.E.2d 222 (S.C. Ct. App. 1998).

Defendants first contend that there is a genuine issue of material fact whether the Hunters' acts are deemed an "occurrence" and that because the policies fail to define the term "accident" the court should look to other common understandings of the term. In <u>Harvey</u>, 498 S.E.2d at 224–26, the court considered whether a homeowner's insurance policy provided coverage against claims that the named insureds, a grandmother and grandfather, sexually abused their grandchildren. The policies in <u>Harvey</u> defined a covered "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions which results, during the policy period, in: (a) bodily injury; or (b) property damage." There too, the policies did not define the term "accident." The <u>Harvey</u> court concluded that there was no coverage because "an intended injury cannot be accidental." <u>Harvey</u>, 498 S.E.2d at 226. Indeed, in <u>Harvey</u> the court concluded that because "the sexual abuse of a child is so inherently injurious . . . [the] intent to harm the child will be inferred as a matter of law." <u>Id.</u> In addition, the court held, "the effect of sexual abuse is so integral to the act that the intent to do the act is interchangeable with the intent to cause the resulting injury." <u>Id.</u> at 227. In short, under South Carolina law "an intended injury cannot be accidental." <u>Id.</u> at 225. It is the "intent to act, coupled with the intent to produce the consequences" that determines whether an accident has caused the resulting injury. <u>Id.</u> at 227.

> At the least, therefore, an insured's act is not an accidental contributing cause of injury when the insured actually intended to cause the injury that results. "[A]n accident is never present when a deliberate act is performed unless some additional unexpected, independent and unforeseen [circumstance exists or] happening occurs which produces or brings about the result of the injury or death."

Id.  The Harvey court held that the sexual abuse of a child cannot be an accident when the intent to harm is inferred as a matter of law.  This operates to bar all coverage for Joseph Hunter as his sexual abuse of Doe was not an "occurrence" under the Policy.[5]

The more complicated question is whether Harvey also bars coverage for claims levied against Rose Hunter for negligent supervision of Doe that facilitated Joseph Hunter's sexual abuse.  The underlying suit alleges that Rose Hunter was a non-abusing insured person who was negligent, as she "knew or should have known" that Joseph Hunter was engaging in inappropriate intimate sexual contact with underage girls, and had done so prior to the abuse that he perpetrated on Doe.  Despite Rose Hunter being on notice of this particular predilection, the complaint alleges that Rose Hunter continued to allow Joseph Hunter to spend time with Doe alone and unsupervised in the Hunters' home and failed to warn Roe or Doe of Joseph Hunter's "deviant sexual proclivities." Defendants cite to Harvey for the proposition that such a negligence claim against a non-abusing third person is an "occurrence" in the context of a sexual abuse coverage case.

In Harvey, the mother of the abused child levied claims against the alleged perpetrators of abuse that they negligently injured the minor children by "allowing the plaintiff's minor children to be in the company of a person or persons that each Defendant knew or should have known posed a severe danger to the Plaintiff's minor

---

[5] As the rule of inferred intent to injure invoked in Harvey is directly applicable here, there is no need to wait to see whether the trial court recognizes a valid cause of action for negligence in the underlying suit.  Cf. State Farm Fire & Cas. Co. v. Blanton, 2015 WL 9239788, at *11 (D.S.C. Dec. 17, 2015) ("[T]he state court judge in the underlying tort case found sufficient evidence to charge the jury on negligence as well as self defense. Therefore, this court does not find that the acts by Blanton were intentional acts cloaked in negligence terms.").

children," and "in failing to prevent physical, sexual, or emotional abuse which each defendant knew or should have known was likely to occur to the plaintiff's minor children." Harvey, 498 S.E.2d at 228. The Harvey court found that these allegations alleged negligent or reckless conduct, and that the conduct described alleged actions which constituted an "occurrence" under the Harveys' policy. Id. The Harvey court further held that the negligence claims were not excluded by the intentional acts exclusion in the Harveys' homeowner's insurance policies, as the underlying complaint did not allege that the perpetrators of the abuse intended the harm to the minor children through their negligent supervision. Id. This claim of negligence against a non-abusing third person was, according to the Harvey court, separate and distinct from the acts of molestation by the abuser himself. The Harvey court takes care to note that such a negligence claim was both a covered "occurrence" and not barred by the intentional acts exclusion.

However, the policy in Harvey did not have a joint obligations provision. As discussed above, the language of the joint obligations provision in the Policy is unambiguous. It is clear that Harvey held that acts of molestation by the abuser himself do not constitute an "occurrence" in an insurance policy and so coverage is barred. Read in conjunction with the joint obligation provision in the policy at hand, it was unclear whether coverage is also barred for Rose Hunter as a named insured, leading the court to submit the following certified question to the Supreme Court of South Carolina:

> In Manufacturers & Merchants Mut. Ins. Co. v. Harvey, 498 S.E.2d 222 (S.C. Ct. App. 1998), the South Carolina Court of Appeals held that in a coverage dispute involving sexual abuse, negligence claims against a non-abusing third party constitute "occurrences" and are not barred by the intentional act exclusion in an insurance policy. How does this holding interact with the intentional or criminal act exclusion and joint obligations

11

provision found in Allstate's insurance policy?  Specifically, does Allstate's intentional or criminal act exclusion and the joint obligations provision operate to bar coverage for claims such as negligent supervision and breach of fiduciary duty levied against the non-abusing third party that is the other "named insured" in a policy?

### 3. Coverage for Breach of Fiduciary Duty as an "occurrence" under the Policy

Finally, defendants claim that the breach of fiduciary duty is an "occurrence" such that coverage is warranted.[6]  The operative complaint alleges that Rose Hunter "had a special relationship" with Doe and Roe, and owed a fiduciary duty of care, loyalty and good faith.  Am. Compl. ¶¶ 95–97.  The underlying complaint alleges that Rose Hunter breached this duty in allowing Joseph Hunter to be alone with Doe despite his previous history sexually abusing other minor and failing to warn Roe and Doe of Joseph Hunter's past sexual proclivities, which are substantially similar allegations to the negligence claim against Rose Hunter.  In their briefing, defendants subsume the breach of fiduciary duty claim into the negligence claim.  ECF No. 36 at 8 ("The negligence claim and breach of fiduciary [duty] claim are combined for the purposes of this memorandum and all references to the negligence claim apply equally to the claim for breach of fiduciary duty against defendant Rose.").  Accordingly, the court treats the two claims as one as well.

### B. Discussion of the Answer to the Certified Question

The Supreme Court of South Carolina answered the question certified by this court, stating:

> There is nothing in <u>Harvey</u> or in the public policy of this State that would alter the district court's conclusion "the [Hunter] policy unambiguously

---

[6] Defendants concede that the remaining claim of aiding and abetting fiduciary duty is an intentional tort that is not covered by the Policy.

denies coverage to [Rose Hunter] where [Joseph Hunter] has been barred from coverage."

ECF No. 62-1 at 3. The court clarified that Harvey's holding "is limited to the insurance policy at issue in that case" and mentioned several differences between the policy in <u>Harvey</u> and the Policy here. <u>Id.</u> The Supreme Court of South Carolina concluded by stating again that there is no public policy altering the conclusion that the Policy denies coverage to Rose Hunter. Based on this answer, the court finds there is no coverage for claims levied against Rose Hunter for negligent supervision of Doe that facilitated Joseph Hunter's sexual abuse.

Just like the negligence claim against Rose Hunter, the question of whether the breach of fiduciary duty claim is barred by the joint obligations provision of the Policy was addressed by the Supreme Court of South Carolina in its answer to the certified question. As such, the court finds that there is no coverage for the claim against Rose Hunter for breach of fiduciary duty.

## IV.   CONCLUSION

For the foregoing reasons, the motion for summary judgment is granted.

**AND IT IS SO ORDERED**.

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**January 17, 2019**
**Charleston, South Carolina**